UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENOPTIX, INC. AND CARTESIAN MEDICAL GROUP, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BASHAR DABBAS,<br><br>Defendant. | Case No.: 3:17-CV-1468-CAB-AGS<br><br>**ORDER RE MOTION TO COMPEL ARBITRATION**<br>**[Doc. No. 5]** |

This matter is before the Court on Defendant Dr. Bashar Dabbas' ("Dabbas") motion for an order compelling arbitration. [Doc. No. 5.] The motion has been fully briefed and the Court deems it suitable for submission without oral argument. For the reasons set forth below, the motion to compel arbitration is **DENIED**.

**I.   Background**

On July 20, 2017, Plaintiffs Genoptix, Inc. ("Genoptix") and Cartesian Medical Group, Inc. ("Cartesian") filed suit against Dabbas alleging breach of two written contracts, and misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"). [Doc. No. 1.]

Plaintiff Genoptix is a medical diagnostic laboratory focusing on blood cancer research that contracts with various medical services companies who provide qualified

physicians to review and test blood and bone marrow samples. [Doc. No. 1 at ¶¶ 1, 2]. One of the medical services companies used by Genoptix to provide these pathology services is Plaintiff Cartesian. [*Id.* at ¶ 2.] At the time Genoptix first contracted with Cartesian, Dabbas was the sole shareholder of Cartesian. [*Id.* at ¶ 16.] While working at Cartesian, Defendant Dabbas provided clinical laboratory diagnostic professional services to Genoptix. [*Id.* at ¶ 17.]

In January 2006, Defendant Dabbas, a physician pathologist, and Cartesian entered into the Physician Employment Agreement ("PE Agreement") that defined the terms of the employment relationship between the two parties. [Doc. No. 5-2 at 2.] The PE Agreement includes both an arbitration provision (Section 14) and a clause prohibiting improper use of Trade Secrets (Section 9). [*Id.* at 14, 12.] This agreement is not implicated, by Plaintiffs, in this case.

In September 2008, in order to ensure the security of Genoptix's confidential trade secret information, Dabbas, Genoptix, and Cartesian entered into the Employee Proprietary Information and Inventions Agreement ("EPIIA"). [Doc. No. 1-2.] The EPIIA memorialized the parties' rights and obligations regarding proprietary information and contained an integration clause and a governing law provision. [*Id.* at Sections 10.1, 10.7.] The EPIIA expressly forbids the disclosure of Proprietary Information (Section 1.1, 1.2) and provides that the parties will be subject to the jurisdiction of the "state and federal courts in San Diego County." [*Id.* at 3.] The EPIIA also includes an "Entire Agreement" clause (Section 10.7) which states "[t]his Agreement is the final, complete agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between [Dabbas] and the Company." [*Id.* at 4.] This is one of the agreements implicated, by Plaintiffs, in this case.

In the Spring of 2017, Dabbas was terminated from his position at Cartesian. [Doc. No. 1 ¶ 26.] Prior to termination, Dabbas was employed as the president and chief medical

officer of Cartesian and as medical director for Genoptix.[1] [Doc. No. 5-1 at 5; Doc No. 7-1.] The terms of Dabbas' separation were memorialized in the May 2017, Separation Agreement. [Doc. No. 1-3.] The Agreement includes a clause reminding Dabbas that he "acknowledge[s] and reaffirm[s] [his] continuing obligations owed to [Cartesian and Genoptix] under the [EPIIA]" (Section 6). [*Id.* at 3.] This agreement also includes an entire agreement clause stating "[t]his Agreement, together with the [EPIIA], constitutes the complete, final and exclusive embodiment of the entire agreement between [Dabbas and Cartesian] with regard to the subject matter hereof" (Section 13). [*Id.* at 5.] This is the other agreement implicated, by Plaintiffs, in this case.

Plaintiffs allege Defendant Dabbas, stole "highly confidential Genoptix data which [Dr. Dabbas] has retained and used to unfairly compete with Genoptix in connection with working for a competitor." [Doc. No. 1 at 27-28.] Further, Plaintiffs allege Dabbas' misappropriation of "several Genoptix files containing Genoptix's confidential and valuable business data" violated the EPIIA and the Separation Agreement between the parties." [*Id.* at 3.]

On August 15, 2017, Defendant Dabbas filed a motion to compel arbitration. [Doc. No. 5.] Dabbas contends that the arbitration provision contained in the January 2006 PE Agreement between himself and Cartesian encompasses the dispute at issue here and therefore, the parties should be compelled to arbitration. Plaintiffs filed their response in opposition [Doc. No. 6] and Defendant filed his reply [Doc. No. 7].

---

[1] Dabbas and Genoptix entered into an Amended and Restated Medical Director Agreement ("ARMDA") in October of 2008. [Doc. No. 7-1.] This agreement establishes and defines Dabbas' position as medical director for Genoptix's clinical laboratory. [*Id.* at 5.] It expressly forbids disclosure of "trade secrets, materials and other proprietary information related to Genoptix which is of a secret or confidential nature." [*Id.* at 10.] Additionally, it provides "[s]ave for existing agreements between certain of the parties with respect to confidentiality obligations, there are no other agreements or understandings, written or oral, between the parties, regarding this Agreement other than as set forth herein." [*Id.* at 11.] Because this agreement specifically implicates confidentiality provisions from both prior agreements (the EPIIA and the PE Agreement), whether the ARMDA controls the question of arbitration is moot. Furthermore, the entire agreement clause invalidates any "agreements or understandings" only with regard to "this Agreement" (the ARMDA). This agreement is not implicated, by Plaintiffs, in this case.

## II. Discussion

The question of whether or not the parties have agreed to "submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (internal quotation marks and citations omitted). While "[q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001), "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co.* 561 U.S. at 297 (emphasis in original). Thus, a court applies the presumption of arbitrability "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand" and "only where the presumption is not rebutted." *Id.* at 300; *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 – 45 (9th Cir. 2009) ("The presumption in favor of arbitration does not apply 'if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision.'") (quoting *In re Tobacco Cases I*, 124 Cal. App. 4th 1095 (Cal. Ct. App. 2004)) (collecting cases).

While the Federal Arbitration Act "creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary," courts generally apply state-law principles of contract interpretation. *Ticknor*, 265 F.3d at 936 (internal quotation marks omitted). Although California law favors enforcement of arbitration provisions, "[t]he policy in favor of arbitration does not apply when the contract cannot be interpreted in favor of arbitration. There is no policy in favor of arbitrating a dispute the parties did not agree to arbitrate." *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 772 (2006); *see also Lawrence v. Walzer & Gabrielson*, 207 Cal. App. 3d 1501, 1506 (1989) ("Arbitration is consensual in nature" so "a party cannot be compelled to arbitrate a dispute he has not agreed to submit.").

Defendant's arguments that the PE Agreement's arbitration provision is applicable

to the case in hand are unavailing. The arbitration clause within the PE Agreement limits itself to disputes "between the parties out of or in relation to the validity, construction or enforceability of **this Agreement.**" [Doc. No. 5-2 at 14] (emphasis added). Contrary to Defendant's assertion that this clause supports a broad construction, the Court does not read this provision to include a dispute arising out of two independent agreements, namely the EPIIA and the Separation Agreement. While Defendant cites to multiple cases highlighting the broad applicability of an arbitration clause, absent from Defendant's briefing is a citation to a single binding case enforcing an arbitration clause present in an agreement not at issue in the case. Nevertheless, Defendant continues to rely on the PE Agreement and ignores the facts that Plaintiffs are not suing under this agreement.[2] Neither the EPIIA between Genoptix, Cartesian and Dabbas, nor the Separation Agreement between Cartesian and Dabbas contain arbitration clauses and both contain entire agreement clauses. They are the two agreements alleged to have been breached. Therefore, it cannot be said that the parties agreed to arbitrate disputes regarding violations of either of these agreements. *Granite Rock,* 561 U.S. at 297.

Moreover, the Court does not read the arbitration provision contain in the PE Agreement to encompass Plaintiff, Genoptix, which was not a party to the P.E. Agreement and did not consent to it. Although the PE Agreement and the two agreements at issue all relate, in varying degrees, to Defendant's employment, the PE Agreement was between Dabbas and Cartesian and the arbitration clause contained within it was premised on a disagreement between the two of them. Thus, that any disagreement between Dabbas and Genoptix, a third party, is not within the scope of the arbitration provision. *See generally, Granite Rock*, 561 U.S. at 299 (noting that "the first principle that underscores all of our arbitration decisions: Arbitration is strictly a 'matter of consent.'"); *EEOC v. Waffle House,* 543 U.S 279, 294 (2002) ("It goes without saying that a contract cannot bind a non-party.").

---

[2] Defendant's persistence in trying to implicate the PE Agreement, when it is not at issue in this case, is frivolous and could be subject to Rule 11 if the position is pursued further.

As a consequence, the Court declines to compel the parties to arbitration.

### III. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion to compel arbitration.

It is **SO ORDERED**.

Dated: October 11, 2017

Hon. Cathy Ann Bencivengo
United States District Judge